WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Douglas Lucas,<br><br>　　　　　　　Plaintiff,<br><br>v.<br><br>NCO Financial Systems Incorporated, et al.,<br><br>　　　　　　　Defendants. | No. CV-14-01266-PHX-DGC<br><br>**ORDER** |

Defendants NCO Financial Systems, Inc. ("NCO"), and National Collegiate Master Student Loan Trust I ("NCT"), have filed a motion to dismiss for lack of subject matter jurisdiction and for failure to state a claim, and for judgment on the pleadings. Doc. 21. The motion is fully briefed. Docs. 21, 22, 23, 25. The Court will grant the motion in part and deny it in part.[1]

**I.   Background.**

Plaintiff alleges the following facts in his complaint. Doc. 1. Plaintiff obtained a private student loan in order to fund his education. *Id.*, ¶ 10-13. Sometime later, Defendant NCT obtained some interest in the loan. *Id.*, ¶ 13. While NCT claims to have purchased Plaintiff's debt from the original creditor, Plaintiff never received documentation that NCT is the assigned owner of the loan. *Id.*, ¶ 14; Doc. 21 at 2. NCT hired Defendant NCO to pursue debt collection activities against Plaintiff. Doc. 1 at ¶ 15.

---

[1] The request for oral argument is denied because the issues have been fully briefed and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998).

Plaintiff made regular payments on his loan to NCO from 2008 until December 2012. *Id.*, ¶ 17. In January 2013, NCO claimed the debt was no longer with NCO and began refusing payments from Plaintiff. *Id.*

On June 7, 2013, an NCO representative ("Okwan") contacted Plaintiff and "insisted that Plaintiff should immediately take out a separate private loan or borrow money from family members in order to pay of the balance of the Debt in full and avoid a lawsuit and wage garnishment." *Id.*, ¶ 19. During that same phone conversation, a second NCO representative ("Wilson") came on the line, claimed that the entire balance of the loan was due immediately, and threatened to pursue wage garnishment and a lawsuit against Plaintiff. *Id.*, ¶ 20. Plaintiff claims that these threats pressured him into issuing a $1,000 post-dated electronic check. *Id.*, ¶ 21.

Plaintiff attempted to call Wilson at NCO on June 10, 2013, but the NCO employee who answered the call claimed Wilson was unavailable. *Id.*, ¶ 22. Plaintiff asked NCO to validate his debt with written documentation and to cancel the $1,000 check. *Id.*, ¶¶ 23-24. The NCO employee informed Plaintiff she could not validate the debt, and that if Plaintiff cancelled the post-dated payment the entire debt would become immediately due and he would not receive a second chance to make payments. *Id.*

Later that day, Plaintiff called NCO a second time and was able to reach Wilson. *Id.*, ¶¶ 25-26. Plaintiff asked Wilson about both the wage garnishment threats Wilson and Okwan had made against Plaintiff as well as stopping the post-dated payment. *Id.*, ¶¶ 27-28. Wilson denied making a wage garnishment threat, stating that it would have been inappropriate to do so, and told Plaintiff "next time you call here you will be paying the balance on this account. . . you have ten whole days to have the funds available. Clients are going to move the account." *Id.*, ¶¶ 28-29. Wilson agreed to "fax documentation to Plaintiff, and that they would touch base again on June 12, 2013 regarding Plaintiff's request to cancel the payment." *Id.*, ¶ 30. Plaintiff did not receive the fax. *Id.*, ¶ 31.

On June 12, 2013, Plaintiff called NCO and was informed that Wilson was again

unavailable to speak with him. *Id.*, ¶ 33. Plaintiff received a voicemail later that day from Okwan. *Id.*, ¶ 34. When Plaintiff returned the call, NCO stated that Okwan was unavailable, Plaintiff's account had once again been moved, and NCO was unable to provide Plaintiff with documentation. *Id.* NCO placed Plaintiff on an extended hold while NCO researched the account issue, and eventually informed Plaintiff there had been a mistake: NCO did possess Plaintiff's account. *Id.* NCO transferred Plaintiff's call to Wilson, who told Plaintiff NCO could not validate the debt without a payment arrangement of 60-90 days or more, but NCO was "really banking on [Plaintiff] getting a loan to pay it off." *Id.*, ¶¶ 34-35. Plaintiff sent a written request to NCO requesting validation of the debt, but received no response. *Id.*, ¶¶ 37, 45.

Following these phone calls, Plaintiff made additional attempts at reaching NCO and NCT in an attempt to find who had possession of his debt. *Id.*, ¶ 39. NCO and NCT both informed Plaintiff that his debt had been transferred to a third entity, Gurstel Chargo, PA. *Id.*, ¶ 40. When Plaintiff called Gurstel Chargo, they denied having possession of the account. *Id.*, ¶ 41.

Plaintiff alleges that each transfer of his account has resulted in invalid charges and rate hikes amounting to approximately $1,400. *Id.*, ¶ 44; Doc. 22, 2-3. Additionally, Plaintiff claims his credit has been negatively impacted as a result of Defendant's misrepresentations regarding the location of the debt, and refusal to accept payment. Doc. 1, ¶ 47. Plaintiff filed this action on June 6, 2014, alleging that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, and intentionally inflicted emotional distress on Plaintiff. *Id.*

**II. Analysis.**

Defendant asserts Plaintiff's claims should be dismissed for three reasons: (1) the Court lacks subject matter jurisdiction over Defendant NCT because NCT is not a "debt collector" as defined under the FDCPA; (2) Plaintiff's claim against Defendant NCO is moot following Defendant's July 17, 2014 Offer of Judgment; and (3) Plaintiff has failed to plead any facts in support of his IIED claims. Doc. 21 at 2. The Court will address

1 each issue in turn.

## A. Defendant NCT as Debt Collector.

"It is the purpose of [the FDCPA] to eliminate abusive debt collection practices by debt collectors." 15 U.S.C. § 1692a (e). A defendant must be a "debt collector" as defined in the statute to be liable under the FDCPA. *Izenberg v. ETS Servs.*, 589 F. Supp. 1193, 1198 (C.D. Cal. 2008) (citing *Heintz v.* Jenkins, 514 U.S. 291, 294 (1995); *Romine v. Diversified Collection Servs., Inc.*, 155 F.3d 1142, 1146 (9th Cir. 1998)).

"The term 'debt collector' means any person who uses any instrumentality of interstate commerce or the mails in any business the principle purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a (6). The term "debt collector" does not include "any person collecting or attempting to collect any debt owed . . . to the extent such activity . . . (iii) concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a (6)(F)(iii).

### 1. Subject Matter Jurisdiction.

Defendant argues that NCT cannot be considered a "debt collector" because NCT purchased Plaintiff's debt before Plaintiff's default, and that the Court therefore lacks subject matter jurisdiction. Whether a particular defendant is a "debt collector" under the FDCPA is a question on the claim's merits, not an issue of subject matter jurisdiction. *See Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 997-98 (9th Cir. 2010); *Trs. of the Screen Actors Guild-Producers Pension & Health Plans v. NYCA, Inc.*, 572 F.3d 771, 775 (9th Cir. 2009)). The Court will not dismiss the claims against NCT for lack of subject matter jurisdiction.

### 2. Failure to State a Claim.

Defendant claims that Plaintiff's complaint fails to mention a single fact sufficient to state a claim against NCT under the FDCPA. Doc. 23 at 5. The Court agrees.

Plaintiff asserts in his complaint that NCT is "debt collector," that NCT hired NCO to pursue the debt, and that NCT never provided Plaintiff with validation of his

- 4 -

debt. *Id.*, ¶¶ 7, 14, 45. But his complaint includes no factual allegations to show that NCT is in fact a debt collector, and no factual allegations regarding any actions taken by NCT that violated the FDCPA. Virtually all of Plaintiff's factual allegations concern actions taken by NCO. *Id.*, ¶¶ 14-41. Plaintiff contends in his response brief that NCT is liable under the FDCPA because NCT and NCO are "pretty much the 'same' entity" (Doc. 22 at 6), but the complaint – which must be the focus of the Court's attention in ruling on a Rule 12(b)(6) motion – fails to allege a single fact that would support this theory. The Court will dismiss Plaintiff's FDCPA claims against NCT for failure to state a claim.

### B. Mootness of Plaintiff's Claims.

Defendants contend that Plaintiff's claims against NCO have been rendered moot because Plaintiff refused Defendant's Rule 68 offer of judgment. Doc. 21 at 9-10. As Defendants should have recognized, the Ninth Circuit has rejected this argument. *Diaz v. First American Home Buyers Protection Corp.*, 732 F.3d 948, 954-55 (9th Cir. 2013) ("an unaccepted Rule 68 offer that would have fully satisfied a plaintiff's claim does not render that claim moot.").

### C. Intentional Infliction of Emotional Distress.

To support a claim for Intentional Infliction of Emotional Distress ("IIED") in Arizona, a plaintiff must show: (1) the defendant's conduct was extreme and outrageous; (2) the defendant intended to cause emotional distress or recklessly disregarded the near certainty that such distress would result from his conduct; and (3) severe emotional distress occurred as a result of defendant's conduct. *See Ford v. Revlon,* 734 P.2d 580, 585 (Ariz. 1987). In order to meet the first element, the plaintiff must show that the defendant's acts were "so outrageous in character and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Mintz v. Bell Atl. Sys. Leasing Int'l, Inc.*, 905 P.2d 559, 563 (Ariz. Ct. App. 1995) (citing *Cluff v. Farmers Ins. Exchange*, 460 P.2d 666, 668 (1969)). Defendants' alleged actions fall well short of conduct typically deemed

sufficient to sustain a claim for IIED under Arizona law.

**IT IS ORDERED** that Defendant's motion to dismiss (Doc. 21) is **granted in part** and **denied in part**. The FDCPA claims against NCT and the IIED claim are dismissed.

Dated this 21st day of January, 2015.

_____
David G. Campbell
United States District Judge